**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NICK BROWN,<br><br>        Plaintiff,<br><br>v.<br><br>JANUS OF SANTA CRUZ,<br><br>        Defendant. | Case No. 21-cv-00094-BLF<br><br>**ORDER GRANTING MOTION FOR REMAND** |

Plaintiff Nick Brown brings this putative class action against his employer Defendant Janus of Santa Cruz ("Janus") for various California state law wage and hour violations. Defendant removed the action to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Not. of Removal, ECF 1. Before the Court is Plaintiff's motion to remand. Remand Mot., ECF 14. For the reasons that follow, the Court GRANTS Plaintiff's motion to remand.

**I.  BACKGROUND**

Plaintiff Nick Brown worked for Janus from May 28, 2018 until about September 4, 2020. Compl. ¶ 7, Ex. A to Stokes Decl., ECF 1-4. Plaintiff brings this action on behalf of "[a]ll current and former non-exempt employees who worked for Defendants in California within the last four years up to the time that class certification is granted." *Id.* ¶ 20. Plaintiff alleges that all similarly situated employees were subject to the same wage and hour violations. *Id.* ¶ 26.

Plaintiff alleges that he and other workers at Janus were not permitted to take a 30-minute meal break for every five hours worked. *Id.* ¶ 32. Plaintiff also alleges that he and other workers at Janus were not permitted to take 10-minute rest breaks for every four hours they worked. *Id.* Defendant allegedly "denied" employees from taking breaks due to "business demands." *Id.* ¶ 35.

Defendant also "frequently" scheduled employees to work overnight shifts and subsequent daytime shifts hours later the same workday. *Id.* ¶ 33. Employees were not paid overtime or double time for these double shifts. *Id.*

Based on these allegedly unlawful acts by the Defendant, Plaintiff filed the instant complaint in Santa Cruz County Superior Court on December 3, 2020, bringing the following six causes of action: (1) failure to pay wages in violation of Cal. Lab. Code §§ 203, 510, 1174, 1194, and 1198; (2) failure to provide meal breaks in violation of Cal. Lab. Code §§ 226.7, 512, and IWC Wage Order 4 § 11(B); (3) failure to provide rest breaks in violation of Cal. Lab. Code §§ 226.7, 512, and IWC Wage Order 4 § 12(B); (4) unfair business practices under Cal. Bus. & Prof. Code § 17200, *et seq.*; (5) a claim under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698, *et seq.*; and (6) failure to provide accurate, itemized wage statements in violation of Cal. Lab. Code § 226(a). *Id.* Plaintiff seeks various relief, including injunctive relief, damages, and reasonable attorneys' fees. *Id.* at 17.

On January 6, 2021, Defendant removed the action to this Court, asserting that this Court has diversity jurisdiction under CAFA because "(1) the amount placed in controversy by the complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and costs; (2) the aggregate number of putative class members in all proposed classes is 100 or greater; and (3) diversity of citizenship exists between at least one putative class member and Defendant in this matter. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1089–90, 1090 n.2 (9th Cir. 2010)." Not. of Removal ¶ 14, ECF 1.

**II.   PAGE LIMITS ON BRIEFING**

Before turning to the parties' substantive arguments, the Court briefly addresses procedural issues in Plaintiff's opening brief, Defendant's opposition brief, and Plaintiff's reply brief. Remand Mot.; Remand Opp., ECF 19; Remand Reply, ECF 20. The Court's Standing Order for Civil Cases, which is available at www.cand.uscourts.gov/judges/freeman-beth-l-blf/, sets a ten-page limit on opening briefs, a ten-page limit on opposition briefs, and a five-page limit on reply briefs on motions to remand. Furthermore, Civil Local Rule 7-3(c) requires that "[a]ny evidentiary…objections to the

1   opposition must be contained with the reply brief or memorandum." Civ. L.R. 7-3(c). The Court
2   accordingly STRIKES page 11 of Defendant's opposition brief and pages 6–14 of Plaintiff's reply
3   brief for violating the Local Rules and this Court's Standing Order.

### III. LEGAL STANDARD

Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Pursuant to CAFA, federal courts have original jurisdiction over state law actions where (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the number of members of all proposed plaintiff classes in the aggregate is more than 100, and (3) where any member of a class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d). Typically, courts strictly construe the removal statute against removal jurisdiction. *See, e.g.*, *Provicial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015).

In seeking removal under CAFA, the removing party bears the burden of establishing federal jurisdiction. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The removing party must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 88 (citing 28 U.S.C. § 1446(c)(2)(B)). The removing party must also establish that the number of class members exceeds 100 and minimal diversity exists between the parties. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

When a party moves to remand under CAFA, they present either a "facial" attack or a "factual" attack on the removing party's showing of jurisdictional elements. A facial attack does not present any new evidence, but instead argues that the allegations offered by the plaintiff "are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004))

3

1  (internal quotation marks omitted). By contrast, a factual attack "contests the truth of the plaintiff's
2  factual allegations, usually by introducing evidence outside the pleadings." *Leite*, 749 F.3d at 1121
3  (citing *Safe Air for Everyone*, 373 F.3d at 1039). When the removing party is presented with a facial
4  attack, the Court applies a weaker evidentiary standard; in those cases, a removal "need not contain
5  evidentiary submissions but only plausible allegations of jurisdictional elements." *See Salter v.*
6  *Quality Carriers, Inc.*, 974 F.3d 959 (9th Cir. 2020) (quoting *Arias v. Residence Inn by Marriott*,
7  936 F.3d 920, 922 (9th Cir. 2019)) (internal quotation marks omitted). When faced with a factual
8  attack, the Court applies a stronger evidentiary standard. The removing party "must support her
9  jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that
10 governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (citing *Hertz Corp. v. Friend*,
11 559 U.S. 77, 96–97 (2010); *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir.2010) (en banc);
12 *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987); Fed .R. Civ.
13 P. 56(c)).

14     CAFA contains three notable jurisdictional exceptions. The "local controversy" and "home-
15 state controversy" exceptions require a court to decline jurisdiction. *Serrano v. 180 Connect, Inc.*,
16 478 F.3d 1018, 1022 (9th Cir. 2007); *see* 28 U.S.C. § 1332(d)(4)(A) and (B). A district judge may
17 also decline jurisdiction under the discretionary home-state exception. *See* 28 U.S.C. § 1332(d)(3).
18 The "party seeking remand bears the burden to prove an exception to CAFA's jurisdiction" by a
19 preponderance of the evidence. *Serrano*, 478 F.3d at 1021-22; *Mondragon v. Capital One Auto Fin.*,
20 736 F.3d 880, 884 (9th Cir. 2013).

21 **IV.    EVIDENTIARY OBJECTIONS**

22     Defendant submitted its notice of removal with supporting declarations from Rudy
23 Escalante, CEO of Janus, and Marianne Buckley, Director of Human Resources at Janus. Escalante
24 Decl. ISO Not., ECF 1-2; Buckley Decl. ISO Not., ECF 1-3 ("First Buckley Decl."). Defendant later
25 submitted a supplemental declaration of Marianne Buckley in support of its opposition. Buckley
26 Decl. ISO Opp., ECF 19-1 ("Second Buckley Decl."). In his motion, Plaintiff objects to the
27 Escalante Declaration on the grounds that the evidence offered in the declaration lacks foundation
28 and fails to comply with the best evidence rule. Remand Mot. at 9–10. Plaintiff also argues that

4

Escalante offers the total number of non-exempt employees, the total number of hours they worked, and the wages of those workers, but "fail[s] to explain what he did to compute these figures." *Id.* at 9–10. Plaintiff objects to the First Buckley Declaration for "fail[ure] to explain the source of her knowledge regarding the residence locations of former employees." *Id.* Plaintiff also states that the First Buckley Declaration is "riddled with hearsay." *Id.* at 4. Finally, Plaintiff in reply contends that the Second Buckley Declaration is untimely because it was submitted over thirty days after Defendant's removal deadline. Remand Reply 1–2.

In opposition, Defendant characterizes the Plaintiff's motion to remand as a "facial" attack on the facts presented in the notice of removal. Remand Opp. at 5. Defendant argues that there is no legal basis to require Mr. Escalante to explain his computations and that a passing reference to the best evidence rule is meaningless. *Id.* Defendant also argues that Mr. Escalante established his personal knowledge by virtue of his role as Janus CEO and his access to employment records. *Id.* Defendant further argues that its submission of the Second Buckley Declaration moots Plaintiff's objections to the First Buckley Declaration. *Id.*; Second Buckley Decl.

The Court OVERRULES all of Plaintiff's objections. First, the Court is not persuaded the Second Buckley Declaration is untimely. District courts in the Ninth Circuit regularly allow declarations to be submitted for the purpose of establishing jurisdiction under CAFA after the thirty-day window has passed. *See e.g. Cortez*, 2019 WL 955001 at *3; *Lucas v. Michael Kors (USA), Inc.*, No. 18-CV-1608-MWF, 2018 WL 2146403 at *3 (C.D. Cal. May 9, 2018); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335 at *3 (C.D. Cal. Jan. 7, 2015). Second, the Court is satisfied that both Mr. Escalante and Ms. Buckley have established their personal knowledge based on their job responsibilities and access to information. *See* Escalante Decl. ¶¶ 2-3; First Buckley Decl. ¶¶ 2-3; Second Buckley Decl. ¶¶ 1-7. Third, there is no dispute that Plaintiff has presented a facial attack in its motion to remand. *See* Remand Opp. at 5; Remand Reply at 3. Applying the lower evidentiary standard to this case, Defendant simply needs to provide "plausible allegations of jurisdictional elements." *Salter*, 974 F.3d 959. Accordingly, Defendant may rely on the Escalante Declaration, the First Buckley Declaration, and the Second Buckley Declaration when seeking to prove jurisdictional elements under CAFA. Plaintiff's remaining objections—that the declarations

5

1  contain hearsay and run afoul of the best evidence rule—fail to hold any weight under this lower
2  evidentiary standard. All three declarations offered by the Defendant contain plausible allegations
3  of jurisdictional elements and are therefore useful for proving jurisdictional elements under CAFA.

### V. DISCUSSION

#### A. Elements of CAFA Jurisdiction

To meet its burden of demonstrating that the Court has jurisdiction under CAFA, Defendant must prove the following criteria: (1) the putative class contains at least 100 members; (2) at least one plaintiff is diverse in citizenship from any defendant (*i.e.*, minimal diversity); and (3) the aggregate amount in controversy is greater than $5,000,000. *Ibarra*, 775 F.3d at 1195 (citing 28 U.S.C. § 1332(d)). Plaintiff contends that the Defendant has not established any of these factors. *See* Remand Mot. The Court agrees with Plaintiff in part; for the reasons detailed below, the Court finds that Defendant has failed to establish that more than $5,000,000 is in controversy in this suit.

#### 1. Class size

Ms. Buckley attests that Defendant employed 181 non-exempt employees in California in 2019 alone. Second Buckley Decl. ¶ 13. Plaintiff objects to this showing solely on evidentiary grounds. *See* Remand Mot. at 9–10. The Court overruled this objection. *See* Section IV. Thus, the Court finds that Defendant has provided sufficient proof that the putative class size is greater than 100 persons.

#### 2. Minimal Diversity

Defendant presented evidence that three former non-exempt Janus employees are now non-citizens of California. *See* Second Buckley Decl. ¶ 17. If any one class member has different state citizenship than any one defendant, minimal diversity is satisfied under CAFA. 28 U.S.C. § 1332(d)(2)(A). Plaintiff objects to this showing solely on evidentiary grounds. *See* Remand Mot. at 4, 10. The Court overruled these objections. *See* Section IV. Accordingly, the Court finds that the Defendant has established minimal diversity for the purposes of CAFA.

#### 3. Amount in Controversy

In its notice of removal, Defendant alleged that $6,671,875 was in controversy. Not. of

Removal ¶ 31. In its opposition brief, Defendant raised its estimate to $10,244,784.38.[1] Plaintiff disputes these calculations on multiple grounds.

### *i. Rest and Meal Period Violations*

In its notice of removal, Defendant alleges that $3,050,000 is in controversy from rest and meal period violations. Not. of Removal ¶ 28. This figure is based on the assumption that all non-exempt Janus employees were subject to the same rest and meal period violations. *Id*. Plaintiff objects that Defendant improperly assumed that Janus prevented **all** non-exempt employees from taking **all** their breaks in this four-year period. Remand Mot. at 8. Plaintiff argues that he never made such an allegation in his complaint. *Id*.

Defendant offers new, more detailed calculations in its opposition brief. Relying on annual employment figures pulled from employee records and offered in the Second Buckley Declaration, the Defendant divides its math into five segments, one for each calendar year in the claim period. Remand Opp. at 7. Defendant multiplies the total number of non-exempt employees at Janus in a given year by an average of 250 shifts for each non-exempt worker from 2017-2020 plus an extra 20 shifts for December of 2016 by the average hourly rate of pay for the given year. *Id.* Defendant sums the calculations for each year and multiplies the number by two to account for both meal period premiums and rest period premiums. *Id.* Defendant comes up with a final figure of $4,683,330. *Id.* at 8. These new calculations again assume that Janus prevented all non-exempt employees from taking all breaks.

First, the Court must inquire into the validity of the 100% violation rate which Defendant uses in its calculations. This inquiry is fact-specific; the Ninth Circuit allows a 100% violation rate to be assumed in some cases, *see LaCross v. Knight Transportation, Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015), but disallows this assumption in other cases, *see Ibarra*, 775 F.3d at 1199-1200. A party removing pursuant to CAFA may assume a 100% violation rate when that assumption is "supported directly by, or reasonably inferred from, the allegations in the complaint." *Cortez*, 2019 WL 955001, at *5 (quoting *Ford v. CEC Entm't, Inc.*, No. 14-cv-01420-RS, 2014 WL 3377990, at *3 (N.D. Cal.

---

[1] This figure is calculated by totaling the Defendant's estimates of meal and rest period premiums, unpaid wages, and attorneys' fees. Remand Opp. at 6–9.

July 10, 2014)) (internal quotation marks omitted). This rule of thumb is refined by the Ninth Circuit's finding in *Ibarra* that "a 'pattern and practice' of doing something does not necessarily mean *always* doing something." 775 F.3d at 1198–99 (emphasis in original).

A defendant must show that a reasonable reading of the complaint could place all breaks by all class members in controversy. *Cortez*, 2019 WL 955001, at *5. In this case, Defendant's assumption of a 100% violation rate is not "reasonable." On four occasions, the Plaintiff states that the policy which withheld meal and/or rest breaks was "uniform" or "uniformly administered." Compl. ¶ 23, 24, 51, 58. Defendant highlights the use of this language in its opposition. Opp. at 6. But "uniformly administer[ing]" a "policy" does not mean that Defendant withheld all meal breaks. *See Ibarra* 775 F.3d at 1198-99 (finding that a "'pattern and practice' of doing something does not necessarily mean always doing something"). Indeed, district courts in the Ninth Circuit regularly find that a "uniform policy" does not imply a 100% violation rate. *See Chin v. Cole Haan, LLC*, No. 16-CV-02154-JD, 2016 WL 7211841, at *2 (N.D. Cal. Dec. 13, 2016) (finding an allegation that defendant "engaged in a uniform policy" of wage abuse did not imply a 100% violation rate); *Brown v. United Airlines, Inc.*, No. 19CV537-MMA (JLB), 2019 WL 2952200, at *5 (S.D. Cal. July 9, 2019) (same); *Amirian v. Umpqua Bank*, No. CV177574FMOFFMX, 2018 WL 3655666, at *5 (C.D. Cal. July 31, 2018) (same). Indeed, this Court finds it wholly implausible that Defendant withheld each and every meal break from each and every employee. Nor does Defendant offer the Court any evidence that would render a 100% violation rate non-speculative.

District courts within this circuit have found violation rates ranging from 20% to 60% when faced with similar allegations. *See Alvarez v. Off. Depot, Inc.*, No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding that a 60% violation rate on meal and rest breaks was reasonable when plaintiff alleged a "uniform" practice of meal break violations); *Elizarraz v. United Rentals, Inc.*, No. 218CV09533ODWJC, 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate reasonable when the complaint alleged a "pattern and practice" of meal and rest period violations); *Trigueros v. Stanford Fed. Credit Union*, No. 21-CV-01079-BLF, 2021 WL 2649241, at *4 (N.D. Cal. June 28, 2021) (finding that a 20% violation rate was reasonable when plaintiff pled a "policy and practice" of withheld meal breaks). In light of this caselaw and the

8

1    pleadings, the Court finds that a 50% violation rate is reasonable here.

2        Next, the Court turns to the other elements of Defendant's calculations. The Court agrees
3    with Defendant that when an employer withholds one meal period and two rest periods from a
4    worker on the same day, the worker is entitled to two hours of compensation under California Labor
5    Code § 226.7. *See United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 60 (2011). For
6    the most part, Defendant's math is fundamentally sound; however, the Court finds a critical flaw in
7    the calculations.

8        The Defendant conflates the *total* number of non-exempt employees who worked for Janus
9    in a year with the *average* number of non-exempt employees Janus employed at any given time.
10   The calculations therefore do not properly account for turnover at Janus. The math overcounts the
11   number of shifts that non-exempt employees worked at Janus, and has a downstream effect of
12   overcounting the total amount in controversy. Put more concretely, Ms. Buckley testifies that a total
13   of 181 non-exempt employees worked for Janus in the year 2019. Second Buckley Decl. ¶ 13d. This
14   does not mean that 181 non-exempt employees worked at Janus every week from January 1, 2019
15   until December 31, 2019. It is very likely that there was significant turnover that is not properly
16   represented by these figures. Imagine that Worker A worked for Janus from January 2019 until May
17   2019, only to be replaced by Worker B for the remainder of the year. Together, the workers
18   combined to work roughly 250 shifts throughout the year. The Defendant's flawed math would
19   indicate that these two workers combined to work 500 shifts, severely overestimating the actual
20   shifts implicated by Plaintiff's suit.

21       The Court, therefore, does not rely on the annual employment figures from the Second
22   Buckley Declaration. Instead, the Court uses the estimate of 100 employees that the Defendant
23   originally offered in their Notice of Remand. The total amount in controversy for meal and rest
24   period violations is $1,553,000.[2]

---

[2] **2016:** Multiplying 100 workers by 20 shifts by $14 per hour totals to $28,000. This figure is multiplied by two to account for the fact that Plaintiff alleges both a rest and meal break violation and then divided by two to reflect the 50% violation rate. The final figure for 2016 is $28,000.
**2017**: 100 x 250 x $14.50 x 2 x 1/2 = $362,500.
**2018**: 100 x 250 x $15 x 2 x 1/2 = $375,000.

9

### *ii. Unpaid Wages*

In the complaint, Plaintiff presents two theories under which the putative class were not paid proper wages. First, Plaintiff pleads that Janus "frequently" scheduled non-exempt employees for "graveyard" shifts and then scheduled the same employees to work early the next day. Compl. ¶ 33. Plaintiff contends that the second half of these "double shifts" should be treated as overtime, but that Janus did not pay overtime on those shifts. *Id.* Second, Plaintiff pleads that "at times," Janus deducted thirty minutes worth of compensation to represent purported meal periods, when employees were not in fact allowed to take those meal periods. *Id.* ¶ 36.

In the notice of removal, the Defendant combines these two theories into one, and assumes that every non-exempt employee should be paid a full hour of overtime for each shift they worked. Not. of Removal ¶ 29. Defendant multiplies the average rate of overtime pay across the claim period, $22.88, 250 shifts per year, 4 years, and 100 average non-exempt employees to come to a total of $2,287,500 in controversy. *Id.* Plaintiff disputes this calculation in the motion to remand, calling it "asinine" without offering any underlying reasoning or alternative calculation. Remand Mot. at 8. In its opposition, Defendant holds firm, using figures from the Second Buckley Declaration to increase the total number of non-exempt employees and alter the average wage in each year. Remand Opp. At 8. The adjusted figure is $3,512,497.50. *Id.*

The Court first considers if an average of one overtime hour per day for all non-exempt workers is "supported directly by, or reasonably inferred from, the allegations in the complaint." *Cortez*, 2019 WL 955001, at *5. In opposition, the Defendant simply offers that "[t]aking Plaintiff's allegations at their plain meaning, it is reasonable to estimate that each class member allegedly worked one hour of overtime per shift for which they were not compensated." Remand Opp. at 8. The Court disagrees.

First, Plaintiff claims that Janus forced employees to work "double shifts" but did not pay overtime "frequently." Compl. ¶ 33. Plaintiff does not plead facts about the circumstances under

---

**2019**: 100 x 250 x $15.50 x 2 x 1/2 = $387,500.
**2020**: 100 x 250 x $16 x 2 x 1/2 = $400,000
**Total**: $28,000 + $362,500 + $375,000 + $387,500 + $400,000 = $1,553,000.

which employees were forced to work double shifts, however, and Defendant fails to offer any evidence regarding the circumstances pursuant to this motion. Considering the nature of the violation and the pleadings, the Court thus finds that the complaint supports a reasonable inference that non-exempt workers worked "double shifts" once a week, a 25% violation rate. *See Long v. Destination Maternity Corp.*, No. 15cv2836-WQH-RBB, 2016 WL 1604968, at *8 (S.D. Cal. April 21, 2016) ("Because Plaintiff does not include fact-specific allegations regarding the circumstances of the alleged [wage violation], it is reasonable for Defendant to estimate damages sought based on one . . . violation per employee per week."); *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) ("Given the allegations of a 'uniform policy and scheme' and that violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff."). Plaintiff pleads that Janus required workers to work sixteen total hours during "double shifts." Compl. ¶ 33. When an employee works between eight and twelve hours in a workday, the employee is paid an "overtime wage" that is 1.5 times the regular rate of pay. Cal. Lab. Code § 510. Furthermore, when an employee works more than twelve hours in a workday, the employee is paid a "double time" wage that is twice his or her regular rate of pay. *Id*. Therefore, when faced with a "double shift," workers are entitled to four hours of "overtime" wage and four hours of "double time" wages. The total amount in controversy for overtime on double shifts is $1,397,700.[3]

---

[3] Janus employees were allegedly paid for standard time on two eight-hour shifts. Plaintiff pleads that employees should instead be paid for one eight-hour shift, four hours of overtime, and four hours of double time. Four hours of overtime pay is the same as six hours of standard pay. Four hours of double time pay is the same as eight hours of standard pay. In essence, one "double shift" would entitle an employee to 22 hours of standard time pay. Plaintiff pleads that employees were only paid for 16 hours, such that they were underpaid for six hours of standard time. The calculations are as follows.

**2016:** Multiplying 100 workers by 20 shifts by $14 per hour to get $28,000. This figure is multiplied by 6 to account for the missing hours of standard time pay per double shift and then divided by five to reflect that each employee worked a double shift once a week. The final figure for 2016 is $33,600.
**2017**: 100 x 250 x $14.50 x 6 x 1/5 = $435,000.
**2018**: 100 x 250 x 15 x 6 x 1/5 = $450,000.
**2019**: 100 x 250 x 15.50 x 6 x 1/5 = $465,000.
**2020**: 100 x 250 x 16 x 6 x 1/5 = $360,000.
**Total**: $33,600 + $435,000 + $450,000 + $465,000 + $480,000 = $1,863,600.

11

1   Plaintiff also claims that "at times" Janus deducted thirty minutes of employees' pay to cover
2   up missing meal breaks. Compl. ¶ 36. The "at times" language implies that this practice did not
3   happen consistently. *See Gallegos v. EC USA Holdings Inc.*, No. 2:16-CV-03511-SVW-SK, 2016
4   WL 8674592 (C.D. Cal. Oct. 7, 2016) (finding that the language "at times" in a complaint does not
5   support a 100% violation rate and a 50% violation rate could be supported by this language).

6   The Court previously found that employees missed meal breaks 50% of the time. *See* Section
7   V.A.3.i. The "at times" language supports an inference that Defendant made these deductions 50%
8   of the time when employees missed meal breaks. The Court thus finds that the allegations in the
9   complaint support a reasonable inference that Janus deducted thirty minutes of wages in 25% of all
10  non-exempt employee shifts. The total amount in controversy for these thirty-minute deductions is
11  $388,250.[4]

### iii. Attorneys' Fees

13  In its notice of removal and opposition brief, Defendant adds 25% to the amount in
14  controversy to account for attorneys' fees. Not. of Removal ¶ 30; Opp. at 8. Plaintiff does not object
15  to the use of a 25% benchmark. The Ninth Circuit is clear that future estimated attorneys' fees are
16  properly included in determining the amount in controversy under CAFA. *See Fritsch v. Swift*
17  *Transportation Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future
18  attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy
19  requirement is met."). The Ninth Circuit has set 25% as a proper benchmark for attorneys' fees; this
20  benchmark calls for adjustment "when special circumstances indicate that the percentage recovery
21  would be either too small or too large in light of the hours devoted to the case or other relevant
22  factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).
23  There is no indication that the 25% benchmark is inappropriate here, and, in fact, courts in this

---

[4] **2016:** Multiplying 100 workers, 20 shifts, and $14 per hour to get $28,000. This is divided by four to reflect that the deductions only occurred "at times." The final figure for 2016 is $7,000.
**2017**: 100 x 250 x $14.50 x 1/4 = $90,625.
**2018**: 100 x 250 x 15 x 1/4 = $93,750.
**2019**: 100 x 250 x 15.50 x 1/4 = $96,875.
**2020**: 100 x 250 x 16 x 1/4 = $100,000.
**Total**: $7,000 + $90,625 + $93,750 + $96,875 + 100,000 = $388,250.

1  district routinely apply this benchmark in similar cases. *See e.g. Cortez*, 2019 WL 955001, at *7;
2  *Ramirez v. Benihana Nat'l Corp.*, No. 18-CV-05575-MMC, 2019 WL 131843, at *2 (N.D. Cal. Jan.
3  8, 2019); *Hughes v. Fosdick*, 106 F. Supp. 3d 1078, 1083 (N.D. Cal. 2015).

4      The aggregate amount placed in controversy by Plaintiffs' meal and rest period claim
5  ($1,553,000), double shift claim ($1,863,600), and the thirty-minute deduction claim ($388,250), is
6  $3,804,850. Applying the 25% benchmark, attorneys' fees amount to $951,212.50.

7      \*\*\*

8      Defendant has proffered evidence illustrating that this suit implicates $4,756,062.50. This
9  figure falls short of the $5,000,000 threshold required by CAFA. 28 U.S.C. § 1332(d). The Court
10 highlights that Plaintiff raises other claims in his complaint that Defendant did not rely on to meet
11 this $5,000,000 threshold. Had Defendant made a showing as to the potential damages flowing from
12 these claims, it is plausible that Defendant could have successfully met its burden of showing that
13 this Court has CAFA jurisdiction. The Ninth Circuit, however, has made clear that this burden is
14 Defendant's alone, and this Court may not supplant Defendant's role in making this showing. *See*
15 *Ibarra*, 775 F.3d at 1197 ("if a defendant wants to pursue a federal forum under CAFA, that
16 defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount
17 in controversy exceeds $5 million"). As it were, Defendant has not presented any argument
18 calculating the amount placed in controversy by the remaining claims or evidence in support thereof.
19 The Court thus concludes that Defendant has failed to prove by a preponderance of the evidence
20 that the amount in controversy exceeds $5,000,000.

21     Because Defendant has not proven by a preponderance of evidence that the total amount in
22 controversy exceeds CAFA's jurisdictional threshold of $5,000,000, the Court lacks jurisdiction
23 under CAFA.

24

25 **IV. ORDER**

26     For the foregoing reasons, Plaintiff's motion to remand is GRANTED. Accordingly, the
27 Court REMANDS this case. The Clerk shall remand this action to the Superior Court of California
28 for the County of Santa Cruz and close the case.

**IT IS SO ORDERED.**

Dated: August 5, 2021

_____
BETH LABSON FREEMAN
United States District Judge